**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Jose Luis Tapia Fierro,

　　　　　Plaintiff,

v.

Leon N Wilmot,

　　　　　Defendant.

No. CV-19-03096-PHX-JAT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

  In this case, Plaintiff Jose Luis Tapia Fierro is suing Defendant Leon N. Wilmot, Yuma County Sheriff, in his individual capacity under 18 U.S.C. § 1983 for violating his Fourth Amendment right against unreasonable searches and seizures. Plaintiff argues Defendant did so by holding Plaintiff for approximately 16 hours after he posted bond until he could be released to the custody of Immigration and Customs Enforcement (ICE) and seeks $4 million in damages. The Court presided over a bench trial in this matter on March 24, 2021. The Court now finds and concludes the following.

## I. FINDINGS OF FACT

  On March 31, 2017, Plaintiff was arrested and taken into the custody of the Yuma County Sheriff's Office (YCSO) following a fatal automobile accident. That same day, ICE issued an Immigration Detainer (form I-247A) and Warrant for Arrest of Alien (form I-200) for Plaintiff. The March 2017 forms stated that ICE had determined probable cause existed to believe Plaintiff was a removable alien because removal proceedings were pending against Plaintiff. On April 4, 2017, Plaintiff appeared before a Yuma County

judge. Because charges had not yet been filed, the judge ordered Plaintiff released from custody.

Following Plaintiff's release, ICE arrested Plaintiff and transferred Plaintiff to a federal detention center in Florence, Arizona. On April 6, 2017, Plaintiff was indicted for the March 31, 2017 automobile accident. On April 11, 2017, ICE again issued an Immigration Detainer (form I-247A) and Warrant for Arrest of Alien (form I-200) for Plaintiff (collectively, the "April 2017 forms"). The April 2017 Immigration Detainer was addressed to the Florence detention center "OR Any Subsequent Law Enforcement Agency" and stated that "[t]he alien must be served with a copy of this form for the detainer to take effect."

On April 20, 2017, ICE returned Plaintiff to YCSO custody. Plaintiff posted a bond in the manslaughter case on May 26, 2017 at 5:10 p.m. The YCSO held Plaintiff in custody until 9:13 a.m. on May 27, 2017, at which point Plaintiff was turned over to ICE. There is no evidence in this record that there is an agreement between the Attorney General and Arizona or Yuma County authorizing YCSO officers to perform the functions of an immigration officer under 8 U.S.C. § 1357(g)(1).

At trial, the Court heard testimony from Plaintiff, who testified that he was not served with either of the April 2017 forms. Regarding the April 2017 Immigration Detainer, the Court finds Plaintiff's testimony credible. The bottom of the Immigration Detainer form includes a section for an immigration officer to complete, indicating the time and manner in which an alien was served with the form. Although the Immigration Detainer form contains an officer's signature, the sections for the date and manner of service are blank. Because this information is missing, the Court has no reason to doubt Plaintiff's testimony that he was not served with the April 2017 Immigration Detainer.

Although Plaintiff also testified that he was not served with the April 2017 Immigration Warrant, the Court does not find this testimony credible. Unlike the April 2017 Immigration Detainer, the Warrant (signed by a different immigration officer than the Immigration Detainer) indicates that it was served on Plaintiff on April 11, 2017 and

the contents of the notice were read to Plaintiff in Spanish. Because the completed form contradicts Plaintiff's testimony, the Court finds that Plaintiff was served with the April 2017 Immigration Warrant.

The Court also heard testimony from Virginia Quiroz, YCSO senior support detention specialist; Gerardo Monjardin, YCSO detention officer; and Israel Amadisto, YCSO detention support supervisor. Quiroz testified to her role in preparing for an inmate's release. She testified that Plaintiff's release authorization form indicated that Plaintiff was going to be released to ICE custody. Quiroz testified that, as a result, she verified that an Immigration Detainer and Warrant were present in Plaintiff's file before signing off on his release. Monjardin similarly testified he checks for Immigration Detainers before signing off on a release to ICE custody. The Court finds Quiroz and Monjardin's testimony credible and accordingly finds that the YCSO was in possession of the April 2017 forms at the time it decided to hold Plaintiff overnight.

Amadisto testified that his duties regarding release include reviewing and signing off on releases. He testified that Plaintiff was held overnight because he posted bond around 5:00 p.m. on May 26, 2017, and no ICE officers were available to available to pick up Plaintiff. He further testified that ICE officials asked the YCSO to hold Plaintiff until the following day. He also testified that when ICE is no longer interested in picking someone up from YCSO custody, it informs the YCSO, and that did not happen in Plaintiff's case. The Court finds this unrefuted testimony credible as well.

Based on the foregoing, the Court finds that at the time the YCSO chose to hold Plaintiff overnight so he could be transferred to ICE's custody, the YCSO knew that ICE believed probable cause existed to suspect Plaintiff was removable. The Court also finds that the YCSO had contact with ICE, and ICE officials requested that the YCSO hold Plaintiff in custody overnight.

## II.   ANALYSIS AND CONCLUSIONS OF LAW

The Fourth Amendment to the Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated . . . ." U.S. Const. amend. IV. "[A]n arrest without probable cause violates the fourth amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). "Probable cause exists 'when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime.'" *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity shields government officials under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 743 (9th Cir. 2021) (quotations omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam*)). A district court may address the two prongs of qualified immunity in either order. *Pearson*, 555 U.S. at 236.

The Court holds that Defendant is entitled to qualified immunity. Addressing the second prong of qualified immunity first and assuming Defendant's conduct constitutes a constitutional violation, the unlawfulness of this action is not clearly established.

The Court has uncovered no binding authority clearly establishing that the conduct at issue here constitutes an unconstitutional seizure. At the time that Plaintiff posted bond, the YCSO was in possession of ICE's April 2017 Immigration Detainer and Warrant. Although the Immigration Detainer was not in effect because it was not served on Plaintiff, the April 2017 forms nonetheless stated that probable cause existed to believe Plaintiff was a removable alien because removal proceedings were pending against Plaintiff. Relying on

this information, the YCSO contacted ICE, and ICE requested that the YCSO hold Plaintiff until it could send an officer to pick up Plaintiff. Pursuant to this request, the YCSO held Plaintiff until an ICE officer could arrive at the jail. Under these circumstances, the Court finds that an officer could reasonably conclude that holding Plaintiff overnight comported with 8 U.S.C. § 1357(g)(10)(B), which recognizes a state officer's ability to "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."

Plaintiff argues that *Arizona v. United States*, 567 U.S. 387 (2012), clearly establishes that the YCSO's conduct in this case was unconstitutional. But *Arizona* does not prohibit the type of cooperation between the YCSO and ICE at issue here. *Arizona* noted that "[t]here may be some ambiguity as to what constitutes cooperation under the federal law[,] but no coherent understanding of the term would incorporate the *unilateral decision* of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." *Id.* at 410 (emphasis added). No such unilateral action is at issue in this case. Instead, the YCSO was acting pursuant to a specific request from ICE to hold Plaintiff. And, by that point, the YCSO and ICE had previously cooperated in transporting Plaintiff between their custody. Accordingly, the Court finds that the YCSO's conduct here falls within the "ambiguity as to what constitutes cooperation" *Arizona* recognized rather than the "unilateral action" *Arizona* prohibits.

The lack of a clearly established law in this area is also evidenced by the competing federal district and state court cases on which both parties rely to support their constitutional augments. Although the Ninth Circuit has recognized that "there need not be a case directly on point" for law to be clearly established, "a body of relevant case law is usually necessary" to "place the lawfulness of the particular action beyond debate." *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021) (citations and alteration omitted). The Court does not find that a sufficient body of relevant caselaw exists addressing the lawfulness of the YCSO's actions. The Minnesota Court of Appeals discussed the cases upon which both parties primarily rely in *Esparza v. Nobles County* and recognized that

"courts have disagreed on what 'cooperation' with the federal government means under section 1357(g)(10)." No. A18-2011, 2019 WL 4594512, at *9 (Minn. Ct. App. Sept. 23, 2019); *compare, e.g.*, *Lopez-Lopez v. Cnty. of Allegan*, 321 F. Supp. 3d 794, 801 (W.D. Mich. 2018) (holding that the defendant did not violate the plaintiff's Fourth Amendment rights by detaining the plaintiff at ICE's request), *with Lopez-Flores v. Douglas Cnty.*, No. 6:19-CV-00904-AA, 2020 WL 2820143, at *4 (D. Or. May 30, 2020) (finding *Lopez-Lopez* unpersuasive and holding that "even if there were sufficient communication [between ICE and state officials] to impute probable cause, defendants would not have authority to detain plaintiff as there was no formal agreement allowing them to do so"). In light of these competing non-binding court decisions, the Court does not find that a body of caselaw existed to clearly establish that Defendant acted unlawfully.

Finally, the Court does not find that Defendant's conduct was so egregious as to be plainly unconstitutional absent a body of relevant caselaw. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("Of course, there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."); *cf. Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (*per curiam*) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution."). As discussed, this case involves an action taken by the YCSO at the request of ICE that is arguably within the scope of 8 U.S.C. § 1357(g)(10)(B) and, consequently, is not egregious on its face.

In sum, the Court concludes that Plaintiff fails to show that Defendant violated clearly established law by detaining Plaintiff overnight at ICE's request. Accordingly, the Court need not address the constitutional question presented. *See Pearson*, 555 U.S. at 236.

## IV.   JUDGMENT

For the foregoing reasons,

///

///

1    **IT IS ORDERED** that the Clerk of Court shall enter judgment for Defendant and
2    against Plaintiff.
3    Dated this 16th day of April, 2021.
4
5
6    _____
7    James A. Teilborg
     Senior United States District Judge
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28